I wonder if both lawyers would step up and tell us who you are. Good morning. Lovisa Popovich on behalf of the people of the state of Illinois. Good morning to you both. Mr. Andrews, you both have 15, and both of you have 15 minutes, and you can save out any portion you wish Mr. Andrews for a response. I think you can safely assume we're familiar with your briefs. Mr. Andrews, before you start, can you tell me what is your understanding of the judge's findings here? He dismissed the petition as being untimely. Did he make any other findings? Not that I saw. You mean he said nothing? He said the state's motion to dismiss is sustained as I find that the petition is not timely filed, and the reason and the supporting documentation accompanying the petition are not sufficient to excuse the delay in filing. Not sufficient to excuse the delay? In filing. Okay. That's how I understand. I took that to mean that he dismissed it as being untimely. Okay. So he didn't go into any of the other merits of the petition as far as you're concerned? That would be my position. He did not rule on the merits, and the state in the trial court didn't ask him to reconsider his ruling and rule both on the timeliness and on the merits, as I'm sure they could have asked. All right. Now, are you asking us to send it back because you feel that it is timely, or are you asking us to actually decide the merits of this petition and send it back for an evidentiary hearing? I'm asking you to send it back because I feel it's timely. And that's all? Well, originally I asked for an evidentiary hearing, but the only issue I've claimed that is meritorious is the actual innocence claim. And the other issues have not been, it's not been determined whether or not they have been, they have the merit, sufficient merit to advance to an evidentiary hearing. So I would say now I think it should be sent back to the trial court for the second stage and not advanced to the third stage. So that would be the relief you're requesting? That would be the relief. That would be. And you would have no quarrel with that relief? If we send it back to the trial judge and we direct the trial judge to conduct a hearing on whether or not the petition should now advance to a third stage because the question of timeliness is not properly before him at the point that this petition. I would not have any problem with that. I think that if I ask the court to decide the merits of the other issues, I believe that's something that's in the realm of the trial judge and not this court. As you are well aware, the evidence in support of a claim of actual innocence has to meet some preliminary tests. It has to be newly discovered. Yes. OK. There's a whole batch of case law on that issue. It has to be material and not merely cumulative. There's a whole batch of cases on that issue. And it has to be of such a conclusive character that it would probably change the result on the retrial. That's the third element. What is your view as to what the trial judge preliminarily, if anything, has to do when he has a freestanding claim of actual innocence and timeliness is not an issue? Does he still have to address those three matters before he proceeds to an evidentiary hearing? I think that he probably does have to address those issues. I don't know. So he would have to make a finding that it was, in fact, newly discovered? It's very easy. And he could say that it isn't newly discovered under the case law. I mean, he could argue that. Yes. He could also say that it's cumulative in his view. That's Ortiz, right? Yes. He could find that. OK. Or he could make that grandiose statement that it's not of such a conclusive character that it would have changed the results and then provide his reasons for that. As long as they weren't based on the credibility of the jury. OK. So credibility, then, would become an issue for the actual hearing, wouldn't it? That's an evidentiary hearing. Yes, Your Honor. And how would he get about this nature of deciding that it's not of such a conclusive character? Would he hearken back to sort of a suggestion of recanted testimony? Or would he talk about the fact that he was a co-defendant, that he pled guilty four years earlier? No? I believe those would go to the credibility of Mr. Smith. All right. Well, then you give me an idea. I think that perhaps if it was on a very collateral issue, if it perhaps just impeached a witness that wasn't like even an eyewitness or something. Well, but the last prong is that it's of such a conclusive character that it would likely change the outcome. You think that just relates to something that's not... You think it's more of a subjective kind of analysis? At the second stage, I just think because of the limitation on considering the credibility of the witnesses, it has to be almost illegal. You have to accept it as true. Okay. And he does at that stage. It's hard to say what the trial judge did in this case. Well, we don't really care what he did. I'm really asking you as to what your view is of what he should do. I believe he has to accept Mr. Smith's affidavit as true and that that affidavit exonerates Mr. Brown. What if the affidavit... I don't like to use hypotheticals, so let's strike that. In this particular affidavit, he added some additional information that had never come out at trial with respect to the relationship between him, the shooter, that is, Mr. Smith, and the defendant. There had been testimony at trial that Mr. Smith and Mr. Brown were actually sitting around drinking before this whole incident occurred and that they left this apartment together. This affidavit, although there's some confusion about exactly where they were physically in because he was a witness. Now, in light of the testimony that had already been heard at the trial, I assume at some point somebody, either in the course of the evidentiary hearing or the trial court before he proceeds to it, has to make a finding about the credibility of Mr. Smith with respect to this affidavit, right? And when you're assessing his credibility, what does he assess it against? What was already known or revealed at the trial, right? Would they do this in the course of the evidentiary hearing? They could attempt to impeach his testimony in the affidavit. They could attempt to carve him up in any way they felt they could. Okay. Is there any kind of requirement in the petition that when you say something is newly discovered that you put some sort of a time frame around it? For example, we can take judicial notice of our orders and the circuit court can take this other defendant, Jesse Smith, pled guilty in 1996. But the petition doesn't say when or how at all that he came about this. I mean, Petitioner William Brown doesn't say when he came to have this information. Smith says, I didn't provide this because I wanted to beat the charge. Fair enough. He did. But he actually pled guilty 1996. So do you have to, does the petition have to tell us how this became newly discovered? I think the phrase newly discovered means unavailable at trial. And I think what is happening here is the state is trying to... So if he had already pled guilty at the time of the trial, how was it unavailable? He was already in the penitentiary. Well, it would still be unavailable under Edgerton because he would have the ability to appeal or file a post-conviction petition. Still does. That's true. Absolutely. That's a little quirk in our post-conviction proceedings that nobody talks about, including Edgerton, does it? There would be nothing to prevent Mr. Smith from recanting his affidavit sometime in the future. If he comes up with his own actual innocence claim with respect to this crime to which he pled guilty. He could recant it on the stand under cross-examination by the state. As far as explaining when Mr. Brown himself obtained the affidavit, I don't think that's necessary. I think the state is... The actual innocence is eliminated in culpable... I'm not talking about culpable. I'm talking about actual innocence, the cases that have always provided that there are basic elements to the actual innocence claim, that the evidence that is presented is newly discovered, that it's non-cumulative and material, and that is of such a character that it would likely change the result on redraft. Those have never changed, and there's no case that I'm aware of, either from the appellate courts or our Illinois Supreme Court, that has told us that those are not part of the equation anymore. Well, I believe they're part of the equation, but I don't believe that newly discovered evidence requires Mr. Brown to explain when he got the affidavit. That's what I'm... The state's argument, I think, that he has to show that is trying to resurrect this culpable negligence requirement that the actual innocence claim has eliminated. Yeah. I think it's sufficient to explain why it wasn't available at trial and why he couldn't have known about it at trial, and he's done that. Okay. And you're perfectly content to have a remand for the trial court to determine whether this should move from second stage to third stage. Well, I'd rather have it go right to the third stage, but I think that it's correct. The state suggests that even at the bottom of page 16 and the brief at the top of page 17, and I think they're correct with respect to the law citing the Coleman, that we ourselves could address those elements that are required as a matter of law for an actual innocence claim, that we could do it here. We could, for example, summarily find that it was incorrect and error for the trial judge to dismiss it on the basis that it was untimely. That is what I'm asking you to do. And then we could proceed to address the other elements of an actual innocence claim as to whether or not it was, in fact, newly discovered, whether, in fact, it was material or cumulative, and whether or not it was likely to change the results. We could do all of those three things ourselves, couldn't we? I don't disagree that the court could do that on this issue. I would think it would be inappropriate concerning the other issues where the merits have never been ruled on. But this issue has been fully briefed and the evidence is there. And we have enough guidance from the Supreme Court as to what constitutes newly discovered evidence and what the elements are in order to make that determination. So we could do that right here, couldn't we? You could order this issue, I believe, to the third stage. We could actually take away from the trial court the decision as to whether or not it was cumulative or not. Yes. We could find that it's not cumulative. We could find that it is, in fact, newly discovered. Could we go to the final stage and say that, in our view, it would change the result? Why would we need a third stage then? Well... In other words, could we skip the third stage and just order a new trial? I don't believe that would be appropriate. What would be left for the trial court to do if we made a finding that, A, it was newly discovered, two, it's not cumulative, and three, that it would likely change the result? What's left at the third stage for anybody to do? Because you know that appellate courts normally don't take away the third stage. I certainly know none of my cases have ever done that, gone directly from the first or second stage to the trial. I guess my point would be, I would think that, and not to argue against Mr. Brown's interest, but I would think that whether or not it would affect the outcome of the trial would depend upon Mr. Smith's credibility. I think you're right. And that's something we couldn't undertake. That's correct. I would agree with that. Let me ask you, what is the highest education of Mr. Brown? I do not know what his highest education is. Don't you think that's important in a case of this nature? I just know that he's not a lawyer, he's a layperson. I mean, he's not a professor. No, and neither is Mr. Smith, the man who drafted the affidavit, obviously. Should we hold him to the standards of being a professor? No, I don't believe so. I believe that whatever ambiguities there may be in the affidavit should be... Are we talking about Mr. Smith's affidavit? That's what I was... And we ought to analyze it in light of his education? Well, I don't think even here it's... Yes, I do. I don't think you should. He's not an author. He's not, you know, most people who don't write well, you know, I have my own problems. I don't think that, you know, an inmate in the Department of Corrections can be expected to lay things out in writing in a crystal clear fashion. Wasn't this supplemented or amended by an attorney, a private attorney? No, what happened was Mr. Brown filed his post-conviction petition and apparently neglected to attach it. He sent it in as an amendment stating, basically, I forgot to put this onto my petition. But, I mean, originally the PD was appointed, they represented him for multiple years, then the private counsel came in, and by the time this case was heard by Judge Kaczmarski, there was private counsel representing him. Yes, but Mr. Smith's affidavit appeared shortly after the pro se petition was filed. So it was apparently in Mr. Brown's possession. Well, I'd have to say that the courts covered everything that I'd intended to cover. We'll give you a chance to respond to the State. Thank you, Counsel. Thank you. Thank you. May it please the Court? Before you start. Yes. The State argues in their brief that Smith's affidavit indicates that the defendant and the co-defendant were not walking together. Where do you get that? It was unclear from Smith's affidavit as to whether they were continuously walking together or whether the defendant was actually veered off to go to his fiancee's grandmother's house and Smith continued on to his girlfriend's house. It was unclear from his own affidavit as to where exactly they were standing. Well, it's pretty clear from the testimony of the case, isn't it? The defendant testifies that he was walking with him and then Smith pulled out the gun and walked away and he continued to his grandmother's house and heard gunshots. This is what the defendant's testimony was at the trial. What's unclear is was he standing there for a while? Did he walk away? It's just a little ambiguous from the way that the affidavit is actually drafted. Let me ask you this. If the petition alleges a claim of actual innocence, do you agree that the judge cannot dismiss this for being untimely? Well, certainly in light of Ortiz, assuming that the judge erroneously dismissed it on timeliness grounds, it doesn't preclude this court. Well, let's assume that he dismissed this because he thought it was untimely. And we could certainly gather that from the statements made in his ruling. Right. He did also say, though, that it was in addition to all the supporting documentation doesn't show that it was filed in a timely manner. Okay. So that's still directing everyone to the fact that he's saying it's untimely. So he didn't have the benefit of Ortiz when he made his statement. Now, counsel has just indicated that he has no quarrel with this court sending it back to the trial judge, indicating that the question of timeliness is pretty much out when there's a petition that is alleging a claim of actual innocence. Do you have any quarrel with this matter being remanded to the trial judge to determine whether this petition should move from the second stage to the third stage because he erroneously concluded that he should be deciding it under a timeliness issue? Certainly we do have a quarrel with this. And this court has recently in People v. Collier, which was cited favorably by People v. Ortiz, that simply saying something is an actual innocence claim and that it's newly discovered is not this magical talisman that automatically takes it outside of any type of discussion. And as Justice Cahill pointed out, does that case discuss the statute that says you don't have to file within the three-year period if you're filing a petition claiming actual innocence? Collier or Ortiz? Collier. I don't believe that it does. It doesn't address the specific issue here. But what we do have is a recent decision in People v. Anderson where it was a successive petition, but it was an actual innocence claim. Anderson was vacated by the Illinois Supreme Court, was it not? Yes, it was. And it recently came through the appellate court on a decision on May 5th where the appellate court flat out said, this court said, the trial court incorrectly determined the timeliness in that case. But in doing so, the court did address some of the issues as to whether it was an actual innocence claim. And the appellate court itself looked to, does it meet the factors? That the initial four factors that Justice Gordon stated in the appellate court decision and Ortiz still apply. Yes, yes, the other judge, Judge Gordon. Those haven't changed. There's no need to redefine it. It is still the same standard. How do you look at them then if you're not looking at credibility? Well, I would go so far as to say it's not that he's looking at the credibility, but there has to be an assessment of what was in the record. Here we have a defendant that filed two affidavits himself. And then he also gave another supporting affidavit from Smith claiming that it's new evidence. The only one that's before us is Jesse Smith's because counsel has conceded that this is what he is putting his banking on. It's the affidavit of Jesse Smith. Nothing else. So we really should be looking at what Jesse Smith said. He basically said this fellow did not commit this murder. He didn't go there with me. He didn't know anything about it. He wasn't there to kill anyone. He's basically innocent. So we start with that. That's his first thing. This is Smith. Then he says that this is something new because there wasn't a single person that would corroborate the defendant's statements and I didn't have anything to do with this. And then he says it's material and argues why. And then he argues that it's of the kind of character that would change the outcome. So if we can't look at the credibility of that affidavit, how do we get to this conclusion that you want us to get to instead of letting the trial judge do it? Well, it could certainly be sent back for another second stage hearing where the trial judge will come to that determination. And the determination would be that this is not a proper actual innocence claim. What the state is asking that instead of sending it all the way back to the trial court to do that, this court has the authority to do that, arguably under People v. Anderson. You have that authority. It doesn't need to go back to the trial court. It fails as an actual innocence claim. It is not duly discovered. There is nothing in the affidavit to show that the defendant himself used due diligence in procuring this affidavit. When you say it's not duly discovered, how do we come to that conclusion? He basically said, I wanted to beat the murder charge. That's why I didn't come forward beforehand. Except he pled guilty to the murder charge in the same year that the defendant was convicted. They knew each other. That's not in your brief. That's not in your brief. That's not in his brief. That's what the Illinois State Penitentiary records show. But there's nothing in your brief about when he pled guilty, whether it was before, whether it was after. There's no request for us to take judicial notice of any of these things. So we're not working with that. We're working with what's in the brief. Well, there is something. There are two times that the state mentioned it in the motion to dismiss arguments that Smith had already pled guilty. We didn't have the exact information before us without actually getting Smith's record and finding out exactly when that happened. And you do say it's not duly discovered. You argue it's not duly discovered because he never really indicates how or when or why it became duly discovered. Sure. And it's certainly not a situation to support that. It's not the situation that we had in Ortiz where the only witness was unavailable for ten years and had fled to Wisconsin, the only witness that could testify and exonerate for actual innocence. It is a total vindication or complete exoneration. Here, at the very best, we would have someone who would corroborate what the defendant already said at trial. So it's not someone that completely exonerates him. Both of them say the same thing. He was an innocent bystander. The defendant already testified to that at the trial. He said he was an innocent bystander. If someone else says it, how is that cumulative? It's not the defendant. It's not the person who has the interest. It's somebody else. He's saying the exact same thing. There's nothing new that he's saying. Well, he's not in the position of the defendant. He's another person who's corroborating it. I mean, having someone else say it is different than the person whose interest is clearly at stake. It could be, but under this analysis for the post-conviction, whether it's an actual innocence claim, it is something that's cumulative. We've already had the defendant that's testified and said he didn't know that this was going to happen. At the very best, assuming the truth of what the affidavit actually says, it's cumulative. It says the same thing. He's not offering anything new. He's not offering. And it fails for that reason to show it fails under the prongs for newly discovered and actual innocence. And this court can certainly come to that determination without sending it all the way back to the trial court to reach the exact same determination. There's nothing that explains in this case why the defendant didn't seek this out earlier. He certainly knew him. There was testimony that they were part of the same gang. And there's nothing in there to say why he sent it later. He filed his first affidavit, the defendant did, in January, then filed Smith's affidavit. Then six years later, through private counsel, he files another affidavit, no mention of Smith whatsoever. What is the actual time frame? When did he file his post-conviction petition? The post-conviction petition was filed in 2000. Not 1999. Right. That's some sort of a typographical error? The 1999 Smith's affidavit is dated January 12th of 1999. Okay. The post-conviction petition was filed in January of 2000. With that post-conviction petition, the defendant also filed on January 21st his first affidavit, the defendant's first affidavit. Again, no mention of Smith shooting at him, no mention of anything that would corroborate what Smith is saying. Then on February 4th of 2000, there's a proceed amended one, and that's where he attaches Smith's affidavit, which he's now claiming is newly discovered evidence and it's new. That's dated January 12th of 1999. A public defender is appointed that same year in 2000, and then we have a gap of, like, five years because the defendant requests a private attorney. A private attorney comes in in 2005. What is the gap? Do you know what this five-year gap is? Well, the defendant had made a motion for someone other than the public defender. The record doesn't indicate. Well, is there no activity on the common law record for five years? I don't have that noted here. I don't. He appointed public defender was March 29th, 2000, and then we have private attorney files his appearance on June 16th of 2005. There is some question about when, some question, it's unanswered actually, when he actually discovered the availability of Smith. Well, that's our argument. I know. But if it is, if it ultimately could meet the test of newly discovered evidence, let's assume that it could, you're going to have to have an evidentiary hearing on that issue, aren't you, on whether or not it was newly discovered within the meaning of newly discovered? To only have it on that? Well, no, that would be part of the evidentiary hearing, wouldn't it? Well, under newly discovered, he still needs to show that it's of such conclusive character that it would probably change. Well, no, that's a separate test. First of all, he has to make a determination that it was, in fact, newly discovered and couldn't have been discovered in time for the trial. Right, he has to overcome that. But that would require taking evidence too, wouldn't it? I'm sorry? That would require taking evidence. Taking evidence from Smith? Or somebody. Well, the judge could certainly make that determination at the second hearing as to whether it was actually newly discovered and whether he could have discovered it sooner. The record contradicts that. How would he do that? He has to look at the record. Again, simply saying it's an actual innocence claim is not something that automatically makes it an actual innocence claim. I know. He has to look at something. Should the defendant be allowed at that point to tender evidence in support of his argument that it was newly discovered? Well, that could have been argued. Defense counsel could have mentioned that at the motion to dismiss. Well, he was precluded from that when they tossed it out on timeliness. He never got a chance. Well, he did actually file. He filed what was entitled William Brown's Argument and Authorities in Opposition of Second Stage Dismissal. In that, actual innocence is in a tiny little footnote. That's the extent of the actual innocence claim. Well, I'm not so sure that the fact that it's in a footnote really makes any difference. I understand the argument you were trying to make in your brief, but it really ultimately leads to some kind of waiver argument. I don't think you're going anywhere with that one. But he could have raised it in front of the judge on the day of the hearing, and that wasn't an issue that day either. Now it's all of a sudden become an issue, but it wasn't an issue at that time. And this affidavit has been around since 1999. But you do agree, do you not, that timeliness in and of itself was an incorrect basis for the trial court to? Under Ortiz, yes. Okay. Well, we haven't extracted that much from you anyway. Yeah, let me ask you this question. Let's assume for the sake of argument that everything in Smith's affidavit is true. Let's assume that this is a man who is actually innocent. And if we don't give him an evidentiary hearing, he'll never be able to prove that, will he? Well, there are certain procedural steps he needs to show in order to get to that stage to prove it. He falls woefully short of that. So we have all this mechanism that we throw in front of actually innocent people so they can't prove it. Now the court sounds like an advocate for the defendant. He is a defendant. But at the same time, you still have to establish whether or not it's cumulative. It could be true to the very last word and be cumulative. Somebody has to make that determination, and I think whether it's cumulative or not is a question of law. And certainly this court can determine that under the de novo standard. It doesn't need to go back to the trial court to that extent. This court can make that determination. Was it an actual innocence claim? Was it a proper one? And you're even suggesting we could do that right here? Yes, you can, as you did in People v. Anderson, where the judge made an incorrect determination and dismissed it. And the court said it was an incorrect determination, but we will still do it. Well, we went through this in Ortiz when it was in front of us at the appellate level. And the trial judge had found that the evidence was cumulative. And as I recall, even one member of the panel agreed with the trial judge. That was a unique situation? You know, that's not going to get you to first base when one judge is in the middle. You don't think that the allegations in the petition in Ortiz were similar to these? They're not. Ortiz is actually, this case is much easier to decide than Ortiz was, because we had an actual innocence claim that had a tiny bit of merit to it because the witness was completely unavailable and under the definition of actual innocence did exonerate. Here, we don't have that. We have cumulative. We have an affidavit that is not of such conclusive character that would change anything. We have Smith basically pleading guilty, coming in and saying, I now know what was in the defendant's mind and he didn't know I was going to pull out that gun, despite all the witnesses that testified that he was there. I mean, the defendant even denied that the witness was there. Well, the way you say that, I mean, there was one witness who testified to him being there. There weren't many witnesses. There was one witness. She said that she knew this William Brown since I think second grade. His name was? His nickname was? O'Shea. O'Shea. And she said she recognized him and that he had a carbine at his side and that when the shooting took place, she was down. But she heard a multiple number of gunshots. Right. She said that the other fellow who she identified in the lineup, Mr. Brown, Yes. was a handgunner, not a rifle. Right. And that he also had his gun, you know, pointed to the ground. She said that the victim, who was someone she spent some time with and had a personal relationship with, after he was shot with multiple gunshot wounds, told her that O'Shea and what was his name? The other fellow's nickname? His name? Yeah, what was his name? Black Jesse. Black Jesse just shot me. She was the eyewitness as far as the actual time of the incident. Then he was able to walk or drag himself or whatever it was to his relative's home. Yes. And when he got to that relative's home, he told that cousin or niece or whatever, I'm not sure about the relationship, that Black Jesse and O'Shea shot him. Yes. So there was evidence of another individual hearing the testimony or hearing the statements of Kenyatta, whose last name escapes me, saying who just shot him. Right. Now, there was no physical evidence corroborating either, you know, the actual gun wasn't recovered. So there wasn't really any physical evidence connecting Jesse to this, just like there wasn't any connecting William Brown. But Jesse pled guilty at some point, and Brown went and had a jury trial, which really wasn't clear from the briefs at all, but he did have a jury trial on this case. So, you know, that was the – oh, and the defendant testified. He testified at trial. He gave his – he said he was at Walker's house and that, you know, he didn't get any guns from Walker, and he left with Jesse, and then they, you know, were on the street, and then he says what Jesse says, and then he says he kind of took a beeline away to go to his relative's home. Relative's home, right. And then the defendant – the co-defendant, you know, went further, and then he heard the shots. I mean, that's a summary of the testimony that occurred at the trial, and I don't think I've misstated it. But there weren't multiple witnesses, but that's not to say that there wasn't other evidence, because we have a statement from the person who was just shot saying that, you know, Black Jesse and O'Shea shot me, and she said she knew O'Shea since second grade, and I don't believe she was impeached on any reason that she would pin this on O'Shea at that time. But, you know, the question here is do we follow the procedure of – did the court err when it – when it determined that timeliness was something he could dismiss this on? I don't believe he could. I think it should go back for him to review whether this should move to the third stage. But in the first instance, it's the trial court that participated in these proceedings and has the job of the trial judge, in my opinion, and, you know. If I can just add, there's one additional piece of evidence, and that's Kevin Walker, who stated, I gave both of them guns because they were at my house earlier. Well, Kevin Walker filed an affidavit recanting everything he said. He said the police coerced him. His mother filed an affidavit, and she said that the police told him that if he didn't say what they wanted him to say, that he would go to jail for the murder. Now, you know, that's not completely pulled out of the realm of fanciful allegations, but the point is that counsel's not relying on this at all. He's not relying on Walker. He's not relying on the mother. He's talking about Mr. Smith and whether or not that meets the test. But in the first instance, that's what the trial judge is supposed to be doing, not deciding whether it was timely, but give the trial court the benefit of the doubt. He didn't have the benefit of four Ts in front of him at the time that he determined it was not timely. But he did have the benefit of not only listening to the defendant testify, but also hearing him cross-examined for the defendant, and that is an important piece of the adversarial process. At the trial, the defendant testified. I don't know if Judge Kaczmarski read the entire transcript of the proceedings. Maybe he did. He may have said he did, but he wasn't the trial judge. It was Judge Colley. But even at a brief block, if someone skimmed the cross-examination, the defendant denied that there was actually a witness in the car, denied ever seeing her, denied hearing screams, denied having a gun. He denied everything. And then Officer Glynnis was called in rebuttal to impeach him. So we have a witness, an eyewitness that was not impeached, and we have a defendant that was affirmatively impeached, and that is all very important in the grand scheme of whether this actual innocence claim is something that is of such conclusive character that would change anything. This court certainly has the authority to be able, at this point, to determine it's not a proper actual innocence claim. Well, it's difficult to figure out how we, how the trial court, or we, can determine these elements when we're not looking at credibility. It's not part of the equation. That's the difficult, you know, that's always been a slightly nebulous concept, because there has to be something, a benchmark to look at. Here the benchmark is just looking at the record. It's self, not necessarily delving into the details of the credibility, but simply saying I'm raising an actual innocence claim, then every single claim will completely obviate any cause of prejudice. No, I think even counsel has conceded that preliminarily before a evidentiary hearing is held, the trial judge has to make an initial determination that the claim of freestanding actual innocence meets the requirements under the law that's set out in People v. Ortiz. He has to find that it is, in fact, newly discovered. Yes. He has to find, in fact, that it's material and not cumulative. Exactly. And I guess he has to find that if it's true, and he has to take it as true, that if true, and at this stage you take it as true, that it would change the result of the trial. Exactly. And if he makes those three findings in favor of it, then he orders an evidentiary hearing. Right. That would be your position. That is exactly our position. Now let's see what he thinks. Thank you, counsel. Thank you. Do you agree with that, Mr. Andrews? Yes, I do. That the trial judge initially is going to have to make those three determinations, and then if he decides favorably on all three, then it goes to an evidentiary hearing. Yes, that's how I understand it. It seems that the confusion is because sometimes. Well, the confusion is that he didn't finish the job at this time around. At least he didn't have the benefit of Ortiz, we should point that out too, and probably arguably felt that it was appropriate to consider timeliness in conjunction with a claim of actual innocence. And having done so, he didn't have to go, he didn't have to say any more than what he did. I'm not here to criticize the trial judge. No, nor are we. I don't think some of your briefs suggest that. No, not at all. I would just like to briefly address the state's argument that it's cumulative, if I may. Sure. You know, Ortiz said that cumulative evidence is evidence that adds nothing. Here, Mr. Smith corroborates Mr. Brown, and I think that's important. The state always attempts to corroborate their witnesses. A defense attorney would want to do that also. It adds a confession by another person, which the jury didn't know about, although I suppose that could cut both ways. It adds a first-person account of how the murder occurred, a completely new one that the jury didn't hear. It contradicts the state's eyewitness directly. The jury didn't hear that contradiction. And it contradicts the decedent's excited utterances. Why does it contradict the eyewitness's testimony? I'm not sure I followed that. Because he fled or because he said that the guy ran away and I was shooting at him? Because he said that he was not involved in any way in the murder, and the eyewitness said that he's standing there with a rifle right above where the decedent was presumably lying on the ground. So all of that, I believe, is new, and it goes to the central issue of this case, who did it? So I don't think you can argue or I don't think it's really true that it's cumulative evidence. Thank you. Counsel, thank you both. The case will be taken under advisement. We are adjourned.